*608 OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner in this CPLR article 78 proceeding challenges an administrative determination denying him participation in a temporary release program. In March 1994, petitioner, an inmate at the Adirondack Correctional Facility, applied for industrial training leave. By decision dated March 22, 1994, the temporary release committee disapproved his application with the following explanation: "Due to serious nature of instant offense during which a male complainant was handcuffed to the inside of his car, robbed of jewelry and money and shot 8 times in the stomach and back causing him to be paralyzed from the waste [sic] down.” On March 28, 1994 petitioner appealed the denial of industrial training leave. On April 27, 1994, the Department of Correctional Services denied petitioner’s appeal as moot with the following comments: "Effective 4/12/94 Chapter 60 of the laws of 1994 of New York State Correctional Services changed temporary release rules and regulations. Diggins is now ineligible for temporary release participation due to his conviction, Att Murder 2. The present law excludes categories of homicide crimes and sex crimes stating inmates whose current crime of commitment falls in either category are statutorily ineligible to participate in any form of temporary release.” (Emphasis supplied.)
Respondent has submitted papers in opposition to petitioner’s petition.[1]
Section 851 (2) of the Correction Law defines inmates who are eligible to participate in the temporary release program. The relevant amendment, effective April 1, 1994, recites as follows:[2] "Further, no person under sentence for any homicide offense defined in article one hundred twenty-five of the penal law or of any sex offense defined in article one hundred thirty of the penal law or of section 255.25 of the penal law shall be eligible to participate in a work release program as defined in subdivision three of this section.” (Emphasis supplied.)
Correction Law § 851 (3) recites: " 'Work release program’ means a program under which eligible inmates may be granted the privilege of leaving the premises of an institution for a period not exceeding fourteen hours in any day for the *609 purpose of on-the-job training or employment, or for any matter necessary to the furtherance of any such purposes.”
Petitioner concedes that he is ineligible for a "work release program”.[3] Petitioner argues, however, that the work release program is only one of several release programs which come under the general category of "temporary release program” as defined in 7 NYCRR 1900.3 and Correction Law § 851. These release programs include: leave of absence; community services program; furlough; industrial training leave; educational leave; and work release. Petitioner points out that he applied for "industrial training leave” not "work release”. Petitioner argues that the amendment to Correction Law § 851 only renders him ineligible for "work release”.
The court notes that Correction Law § 851 (8), (9) contain the following additional definitions:
" 'Industrial training leave’ means a privilege granted to an eligible inmate to leave the premises of an institution for a period not exceeding fourteen hours in any day for the purpose of participating in an industrial training program, or for any matter necessary to the furtherance of any such purpose.
" 'Temporary release program’ means a 'work release program,’ a 'furlough program,’ a 'community services program,’ an 'industrial training leave,’ an 'educational leave,’ or a 'leave of absence.’ ”
Although similar, an "industrial training leave” plainly is not the same thing as a "work release program”, as is evident from a reading of both section 851 of the Correction Law and the rules and regulations promulgated by the Commissioner of Correctional Services. It is true that the construction given statutes by the agency responsible for their administration should not be lightly set aside (see, Matter of Ward v Nyquist, 43 NY2d 57; Matter of Lezette v Board of Educ., 35 NY2d 272, 281). It is also true that due deference must be given to the interpretation of a statute accorded by those charged with interpreting it (Matter of Kelley v Ambach, 83 AD2d 733, 734 [3d Dept 1981]). But due deference is not unlimited deference, and it is equally clear that interpretation of statutes and regulations by a State agency shall only be upheld if its interpretation is not irrational or unreasonable (see, Matter of Reader’s Digest Assn. v State Tax Commn., 103 AD2d 926, 927 [3d Dept 1984]).
*610 The Legislature in enacting the 1994 amendments to section 851 of the Correction Law easily could have excluded persons serving sentences for homicide from eligibility for industrial training leave, if it so intended. The court presumes that the Legislature knew what it was doing when it did not do so and instead specifically limited the eligibility exclusion to the "work release program” as defined in subdivision (3) of section 851. To the extent that the respondent based its April 27, 1994 decision to deny petitioner’s appeal upon enactment of the amendment to Correction Law § 851, and only upon that ground, the decision is in error and therefore is not rational.[4] The court finds that the decision should be annulled and the matter remitted to the respondent for further deliberation.[5]
Accordingly, it is ordered that the petition be and hereby is granted to the limited extent set forth in this decision; and it is further ordered that the appeals decision herein be and hereby is annulled; and it is further ordered that the instant matter be and hereby is remitted to the respondent for further deliberation on petitioner’s appeal not inconsistent with this opinion; and it is further ordered that the relief requested in the instant petition be and hereby is otherwise in all respects denied.

. The court notes that respondent’s answer is unverified. In view of the decision reached herein there is no need to make a determination as to whether or not respondent is in default in pleading.

. L 1994, ch 60, §§ 42, 43.

. See petitioner’s verified petition, at 6.

. Respondent argues that the following provision of Correction Law § 851 (2) supports respondent’s claim of petitioner’s ineligibility: "a person under sentence for an offense defined in paragraphs a and b of subdivision one of section 70.02 of the penal law, where such offense involved the use or threatened use of a deadly weapon or dangerous instrument shall not be eligible to participate in a work release program until he or she is eligible for release on parole or who will be eligible for release on parole or conditional release within eighteen months.” Whether or not this provision has any application to the instant situation, it does not, in any event, appear to be an articulated reason underlying the decision being reviewed.

. The court also notes that it is not self-evident from the face of the Correction Law amendment relied upon by respondent in its appeal decision (referring to "categories of homicide crimes and sex crimes”) that the Legislature intended to preclude work release eligibility for a person serving a sentence of attempted murder in the second degree.